THE T. & P. R'Y CO. v. JOHN CARLTON.

(Case No. 1554.)

1. STATUTE CONSTRUED.— The statute (Rev. Stat., 2900) does not change the rules in any respect, which are well recognized, for the determination of the liability of a railway company either to a passenger or an employee.

2. MASTER AND SERVANT.— While it may be wrongful as to the parent to employ a minor aged eighteen years in a business contrary to the wish of the parent, yet this does not deprive the son of the power to make a contract by which he may obtain necessary employment, and a contract so made creates between a railway company making it, with the son, and the son, the relation of master and servant. The duty of the former, however, in reference to care towards the latter, increases in proportion to his want of capacity. Following Railroad Co. v. Miller, 51 Tex., 274, and Hamilton v. G. H. & S. A. R'y Co., 54 Tex., 562.

3. SAME.— To deny to such a minor, on whose labor a helpless father depended for a support, as in this case, the right to contract and to establish thereby the relation of master and servant, would be to deny the right to live by honest toil.

4. NEGLIGENCE — CHARGE OF COURT.— A charge of the court in a suit for damages by the father of such a minor, who was fatally injured in coupling cars while employed on a railroad, which ignored the fact that the minor was an employee, and which left the jury to infer that the simple fact of hiring the deceased and putting him to work in a place and at a business in which his father did not wish him to labor, was of itself such negligence of the railway company as would entitle the father to recover, is error.

5. RAILWAY COMPANY.— No railway company is required to receive and haul a car of another road which is so defectively constructed or otherwise unsafe as manifestly to imperil the life or limb of an employee.

APPEAL from Kauffman. Tried below before the Hon. Green J. Clark.

*Leake & Henry*, for appellant.

*J. J. Hill*, for appellee.

STAYTON, ASSOCIATE JUSTICE.— The cause of action in this case, as stated in brief of counsel for appellant, is found to be substantially correct, and is as follows:

"Plaintiff. brought this suit against the defendant for damages, alleging that defendant unlawfully and wrongfully procured and caused the plaintiff's son, William Jefferson Carlton, of the age of eighteen years, or about that age, under the parental authority and control of plaintiff, without his consent to quit the service of plaintiff and to enter into that of defendant, whereby plaintiff was deprived of the services and society of his son for a long time, to wit,.

thirty days, and greatly troubled in mind; that his son while in defendant's employment as aforesaid, and working on its line of railroad between Marshall and Jefferson, in the state of Texas, was on the 16th day of January, 1880, injured, so that on the 24th day of said month he died; that the son was sober, industrious and dutiful, and plaintiff was old, poor, infirm and needy; that deceased had for years contributed to the support of plaintiff, who had reasonable expectation of its continuance; that his son, prior and up to the time of his injury, earned $2.50 per day, most of which was applied to the support of plaintiff, and plaintiff had reasonable expectation of receiving support from him to the amount of $500 annually during plaintiff's life, and plaintiff, at the death of his son, had reasonable expectation of fourteen years' continuance of life.

" Plaintiff further alleges that he is the only surviving parent and only beneficiary of the said William Jefferson; that said injuries, wounds and bruises, of which his son died, were caused by the negligence of defendant, and by the defendant's then and there using cars of dangerous construction to the employees engaged in coupling them; that said cars were of peculiarly dangerous construction to said William Jefferson while engaged in coupling them by reason of their having ' duffing bumpers ' on their ends; that his son was not informed or skilled in said dangerous business of brakeman, all of which was known to defendant; that his son was wanting in the caution and discretion necessary in such dangerous employment, and defendant, who knew said facts, did not exercise due care and prudence *in employing him.*

" He charges that said injuries were occasioned by some negligence on the part of defendant — some want of care, skill and precaution on its part unknown to plaintiff."

There was a judgment for the appellee for $2,500.

On the trial, it appeared that on or about the 26th December, 1879, the son, with the consent, or at least with the knowledge and without objection from the father, was employed to work in the appellant's yard at Sherman. The testimony is somewhat conflicting as to what his duties were in the yard, and also as to the familiarity of the son with the duties of a brakeman.

On the same day the son was employed he was sent off on the road as a brakeman, and this seems to have been done contrary to the wish of the father. After being absent for some days the son returned home, and was then told by his father to remain at home until his return in the evening, but the son did not do so, and returned to the train, with which he seems to have stayed, acting as

brakeman, until about the 16th January, 1880, when, in attempting to couple cars, he was injured so that he died about the 24th of the same month.

There is no evidence showing that the cars which the son was coupling at the time he was injured were in any respect defective, nor that the injury resulted from any neglect of the appellant to furnish safe road, cars and appliances, and careful and competent servants to conduct its business.

It appears that the son was in his nineteenth year, a man in stature, weighing about one hundred and eighty pounds, and that he was a person of ordinary intelligence and prudence for one of his years.

In instructing the jury the court, among others, gave the following charge: " If the jury are satisfied, from the evidence, that plaintiff is the surviving father of William Jefferson Carlton, and that the said William Jefferson was employed by the defendant as a brakeman upon its trains, and that while he was engaged coupling its cars he received injuries from which he afterwards died, caused by the negligence or carelessness of the defendant, its agents, servants or employees, and that the deceased did not, by his own negligence or carelessness, contribute to his own death, the jury should find for the plaintiff."

Throughout the case the court seems to have been of the opinion that the act of sending the son upon a train, without the consent of his father, to act as brakeman, was *in itself an act of negligence,* such as would not only prevent the relation of master and servant from existing between the railway company and the son, but as would also enable the father, under the statute, to maintain an action for damage sustained by the death of his son. There was, as before said, no proof of negligence by the appellant such as would render it responsible in damages for an injury, resulting in the death, to an employee.

If the action was based upon a father's common law right for loss of services of his son, it may be true, although the injuries which the son received resulted in death, that he could maintain his action if the son was employed without his consent, and was thus withdrawn from his service, or if employed with his consent to perform certain labor, his son was afterwards without his consent placed at labor more hazardous, through which he was injured. The petition and charge of the court, however, presented a case based upon the statute, giving to certain persons an action for injuries resulting in death, and it is, therefore, unnecessary to consider what would be the measure of damages in an action for loss of services alone.

We have, then, the question whether the mere act of employing a person less than twenty-one years of age, with the consent of his father, to perform a given kind of labor, and afterwards, the minor consenting, placing him in a different position and employment, will constitute such negligence as will sustain an action under the statute for an injury resulting in the death of the son. The evidence tends to show that the duties of brakeman on the road did not expose to greater danger than would employment in the yard.

This question must be determined by considering whether, if the son had been injured, but not fatally, under the same circumstances in which he was fatally injured, he could have maintained an action for such injury.

The statute provides that "The wrongful act, negligence, carelessness, unskilfulness or default mentioned in the preceding article must be of such character as would, if death had not ensued, have entitled the party injured to maintain an action for such injury." R. S., 2900.

In determining whether the party injured could have maintained an action had he survived, we must look to his relation to the railway company; for the same liability does not exist to all persons for an injury inflicted. The statute under which this action is brought does not change in any respect the rules well recognized for the determination of the liability of a railway company, either to a passenger or employee.

To a passenger, injured by the negligence of the employees of a railway company, acting within the line of their employment, a liability exists; not so in all cases in which an employee is injured by the negligence of some other person engaged in the same common employment; upon the contrary, the cases are exceptional in which the employee can recover damages resulting from the mere negligence of other persons in the common employment, and are confined to those cases in which the employee is by the master empowered to do those things which pertain to the master's duties to the servant, as well as to all other persons; and even these cases are subject to qualifications.

While it may have been wrongful as to the father to employ the deceased in a business contrary to his wish, yet this did not deprive the son of the power to make a contract by which he might obtain necessary employment; and a contract so made created between the railway company and the son the relation of master and servant; the duty of the former, however, in reference to care towards the latter increased in proportion to his want of capacity.

The contract as between them would fix the relationship. The duties arising from it, on the part of the master, in reference to the care due to the minor, would vary with the character and hazard of the employment and the intelligence and capacity of the child to comprehend and avoid any danger attendant in the business in which he is engaged. Such we understand to be the rule laid down in Railroad Co. v. Miller, 51 Tex., 274; and in Hamilton v. G. H. & S. A. R'y Co., 54 Tex., 562; and in Coombs v. New Bedford Cordage Company, 102 Mass., 572; Hill v. Gust, 55 Ind., 45; N. & C. R. R. Co. v. Elliott, 1 Coldwell, 620; King v. B. & W. R. R. Co., 9 Cush., 112; C. & G. E. R. Co. v. Harney, 28 Ind., 32; 2 Thompson on Negligence, 977; O. & M. R. R. Co. v. Tindall, 13 Ind., 367.

The risks incident to the performance of the duties of brakeman were within the contract of service made between the appellant and the deceased, and the same rules as to liability and obligation would have to be applied between them as would be applied in any other case in which the servant is injured while in the master's employment, limited only by the requirement resting upon the master more fully to advise an inexperienced minor of any danger incident to the business than he is required to do in the case of an experienced person engaged in the same business.

It has been frequently held that, where a master hired to another a slave to work in a given business or place, and the hirer subsequently, without the consent of the owner, placed the slave in a business or place more hazardous than that contemplated in the original contract of hiring, a recovery could be had for the value of the slave lost while engaged in and by reason of the more hazardous business or place; but those cases have no analogy to the case before us. The slave had no power whatever to contract, nor in any way to create the relation of master and servant between himself and another person. The minor has such power; and while as against his father he cannot defeat his right to have his services by contracting them to another person, yet as between himself and such other person the relation of master and servant may be created by his contract; and especially so when such contract is made for the purpose of obtaining employment necessary to his own support, as in this case it appears to have been. The father seems to have been unable to make a support, by reason of ill health, for himself and family, and for some time prior to the death of his son the latter seems to have obtained employment wherever he could find it, and out of the proceeds of his labor to have supported him-

self and to have contributed to the support of his father and the other members of the family.

Under such circumstances to deny the right to contract, and to establish thereby the relation of master and servant, in some cases, would be to deny the right to live by honest toil. The law imposes no such disability, sedulously as it guards the rights of minors.

Had the deceased not died, but brought this suit to recover damages for the injuries received in the manner shown in the record, he certainly could not have been heard to say that the employment of himself, under the circumstances, was such an act of negligence as would have entitled him to recover. He would have had to show such facts as would ordinarily entitle an employee of age to recover, unless it appeared that his inexperience and want of knowledge of the danger of his position, and proper manner of avoiding it, was such as to have made it the duty of the appellant to warn him upon these matters, and that it had failed in this duty.

In reply to an answer of the appellant, averring due care in having safe road, cars, appliances thereto, and careful and capable servants, and alleging the want of due care in the person injured in the performance of the duties which he had undertaken, if the action was by the person injured, would it avoid such an answer for the injured party to reply, Yes, this is all so, but at the time you employed me you did so with a knowledge that I was a minor, and that my father did not consent to the contract which I made with you? As between the parties to the contract such a reply would be of no avail.

We are of the opinion that the charge of the court did not present the true issues in the case, and that it was misleading, in that it ignored the fact that the injured person was an employee, and left the jury to infer, as counsel claim in this court, that the simple fact of hiring the deceased and putting him to work in a place and at a business in which his father did not wish him to labor, was of itself such negligence of the appellant as would entitle the appellee to a verdict.

In view of the fact that it is not shown by the evidence that the cars which belonged to another company and were being hauled by the appellant's road, and in the coupling of which the deceased was injured, were defective or in any way unsafe, although constructed in some respects differently from those owned and operated by the appellant, it does not become necessary to determine the degree of care necessary to be exercised by one railway company, in reference to the construction and safety of cars belonging to other roads, which it may haul over its own road.

It is, however, certainly true, that the statutes of this state do not compel any railway within this state to receive and haul a car of another road, which is so defectively constructed, or otherwise unsafe, as manifestly to imperil the life or limb of a single employee.

Nor do we deem it necessary to consider the question of proximate and remote cause, in view of what we have already said. For the errors indicated the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered November 30, 1883.]