H. & G. N. R. R. COMPANY v. ELISHA P. MILLER.

1. DAMAGES—PARENT AND CHILD.—See statement of case for a charge of the court held correct as to the liability of an employer of a minor, when the employment is without the consent of the parent, and the minor receives injury from the negligence of the other servants of his employer.

2. DAMAGES.—In a suit by a father against a railway company for permanent injury—as the loss of an arm—inflicted on his minor son by the negligence of other employés of the road, when the employment was without the father's consent, the plaintiff is entitled to recover the value of the son's services until he arrives at the age of twenty-one years, the expense of medical attendance and nursing, and such other expenses as are rendered necessary by the injury.

APPEAL from Harris. Tried below before the Hon. James Masterson.

The appellee sued as the father, and also as next friend of his minor son, Joseph E. Miller, for damages by the latter sustained as brakeman on defendant's train of cars. The petition set forth that the son was nineteen years old, and had been tenderly raised, and was incapable of entering into a legal contract; that, without the knowledge or consent of the father, the defendant induced the son to enter its service as brakeman, and by the defendant's negligence the son was thrown upon the track and his arm so crushed as to render amputation of it necessary, which was done at great expense, &c. Appellee seeks to recover, as father, for the expenses incurred in effecting a cure, and for the loss of the son's time from the accident to his majority; and, as next friend of the son, to recover damages which the latter sustained by the permanent injury and his lessened ability to earn a living.

To this petition defendant below excepted—

1st. Because of misjoinder of distinct causes of action and parties having no interest in common.

2d. Because it shows no cause of action in either the father or the son.

3d. Because the petition does not allege that the son was

in the service of the father at the time of employment by appellant; nor does it allege that appellant knew the son was a minor when employed, or that he was then in the father's employ, or the relation existing between the father and son.

Appellee then filed an amendment, setting up that the son was injured in consequence of the unskillfulness and negligence of W. B. McKinney, as engineer of the train; that he was unfit for engineer, and that appellant was negligent in employing him in that capacity.

At the trial, the son having then filed a separate suit for his injuries, the appellee in this suit abandoned all claim on behalf of the son, and relied only on his own right to recover as the father; and the court overruling all exceptions to the petition, the parties went to trial on the general issue and other pleas.  There were verdict and judgment for appellee for $2,000.  Motion for new trial, which was overruled, and notice of appeal.

The assignments of error were—

1st. In overruling exceptions to petition.

2d. In the court's charge to the jury.

3d. In refusing charges asked by appellant.

4th. In overruling motion for new trial.

The first charge of the court was as follows: "1. Under the law, the father is entitled to the services of his minor children during their minority.  Minors cannot, without their father's consent, make legal contracts; nor without such consent, either before or by acquiescence after knowledge of the father, engage in business for themselves.  If you believe, from the evidence, that Joseph E. Miller was a minor, under twenty-one years of age; that, without the knowledge or consent of his father, he engaged himself to defendant, and whilst so engaged received the injury alleged, then if such injury was not caused by said Joseph's own negligence, plaintiff is entitled to recover for the loss of his son's services whilst under medical treatment, to his necessary expenses in per-

fecting a cure, including medicines and extras required in effecting a cure; also to all reasonable medical bills for which the father is liable, and to such damages as result and flow directly from the injury,—such as the diminished value of services up to the arrival at the age of majority of said minor."

The third charge of the court was as follows, viz.: " 3. When a person or corporation employs a minor, it devolves on such employer to obtain the consent of the father, when such minor is under the control of the father, and whilst said minor forms a part of the father's family. Whilst a minor, the father is liable for the support of his child, and is entitled to the earnings of his son; and where the son, through the negligence of the employer or its servants, receives an injury incapacitating him for a while from labor, and rendering him less serviceable up to his arriving to the age of twenty-one years, the employer thus engaging a minor without the knowledge or consent of the father is liable to the father in damages."

The case, after being submitted in this court, was referred back for further examination and reference to authorities on questions submitted by the court. They will each be found set forth in the brief of appellant's counsel, prepared in reference to the questions.

*Baker & Botts,* for appellant.

I. To the first question asked by this court, " Is the first charge given by the court correct ? " we answer, No. The error is in the measure of damages. The father's right of action does not accrue from the act producing the injury to the son, but from the loss of the son's services consequent upon the original act, and for all necessary expenses incurred in effecting a cure. Mr. Sedgwick, in his work on Damages, says (p. 546): " The action is based on the loss of service alone, and the question is,—What has the plaintiff lost in the services of the servant ? " In such action, the rule of damages is said " to be now well established to be compensation

for the loss of the minor's future services, and the expenses sustained, such as for surgical and medical attendance." (Oakland R. R. Co. *v.* Fielding, 48 Penn., 320; Gilligan *v.* N. Y. & Harlem R. R. Co., 1 E. D. S., (N. Y.,) 453.)

But in this case, after allowing for loss of service while under treatment for his injury, and necessary expenses in effecting a cure, including medical attendance, the court adds, and "such damages as result and flow directly from the injury,— such as the diminished value of services to majority." The last expression is an illustration, and not a qualification of the rule laid down by the court; and the rule pertains to cases concerning the absolute rights of individuals, and not to cases concerning the relative rights, and gives the jury a latitude of discretion not authorized in cases of the latter character, and to assess damages which the minor alone could sue for.

II. "Is an employer, who, without the knowledge or consent of the father, contracts with a minor for labor, and directs and controls him in the performance of it, responsible in damages for any injury done to the minor, which happened without negligence on his part, in performing the work at which he is employed?"

Not to the father. His rights are relative, and grow out of his natural and legal obligations to the son; and the law fixes the nature and measure of compensation which he may recover. His right of action is for loss of service and expenses as a consequence of the injury; but for the injury itself, or the act that produced it, the right of action is in the son. Lord Coke says: "If my servant is beat, the master shall not have an action for his battery, unless the battery is so great that by reason thereof he loses the service of his servant; but the servant himself, for every battery, shall have an action." (Robert Murry's Case, 9 Coke, 113*a*; Wood on Master and Serv., sec. 224.) The same rule applies in a suit by a parent. (Wood on Master and Serv., sec. 14.) In both cases, the gist of the action is loss of service; but in the case

of a parent he may recover expenses of the cure, although the child was incapable of rendering service. (Wood on Master and Serv., sec. 225.)

III. "Do the apparent age and size of the minor have any influence on the question as above stated?"

We find no authority to this point. If the gist of the action was a wrongful employment, the apparent age and size of the minor might be important in determining the good faith of the employer in taking him into his service. But in a suit by the father for damages by him sustained as a consequence of an injury to the minor while in such employ, we cannot see that the latter's appearance can be material. We think the correctness of this position will be apparent from subsequent propositions.

IV. "Does the fact that the employer does not know that he is a minor have any influence on the above proposition?"

We think not, in this character of case. If this were an action for enticing the minor from the father's service, then the plaintiff must needs aver and prove that defendant knew he was a minor; and if the proof on this point were doubtful, or only circumstantial, then the apparent age and size of the minor might be important in determining the question of knowledge.

V. "Does the sort of work, whether ordinarily hazardous or not, have anything to do with this question; and if it has, is it a question of law or of fact as to what is hazardous work?"

If the minor were employed without the consent of the father, (the proof not showing that he had been emancipated,) and the latter sues for damages by him sustained as a consequence of that employment, and for expenses in healing the injuries sustained by the minor while serving in it, we do not see how his rights could be affected by the character of the work the minor was employed for. The loss of his services to the father for the same time is the same, however the minor may be employed; and if wrongfully injured, he is

entitled only to the expense necessarily incurred in healing
and curing the injury, whether it was sustained in an ordi-
narily or extra hazardous work.   This question, it seems to
us, could arise only in a case where there had been a valid
and binding contract of hiring, as in Fort's case, 17 Wall.,
553; and it is claimed that the minor was injured by having
been put at a work more hazardous than he was suited to, and
outside of that for which he was employed.   But if the ques-
tion should be thought properly to arise in a case of the char-
acter of this, we submit, that it is one of fact, to be submitted
to the jury on the testimony, as was done in Fort's case.
(See, also, Murphy's Case, 46 Tex., 356.)

VI.  " Must the father allege and prove that the minor son
was a part of the family, and not allowed to go out and get
employment for himself; or will it be presumed, in absence of
proof to the contrary, from the simple fact of his minority ? "

The rule is, that minors are incapable of making valid or
binding contracts.   The exception is when they have been
emancipated.   When the relation of father and son, and the
minority of the latter, have been shown, we think the onus
is then cast on the defendant to show that his contract with
the child was under such circumstances as that the father is
not entitled to the son's services; *i. e.,* that the father is es-
topped by emancipation, or for forfeiture in some way of his
natural and legal rights.

VII.  " Can a minor, who is employed without his father's
consent, occupy the position of a fellow-servant to one who
is negligent, and thereby excuse the employer ? "   (Elliott's
Case, 1 Cold., 611.)

As between the minor and his employer, he can; but as
between the father, who is entitled to the minor's services,
and to be reimbursed for expenses in healing injuries sus-
tained by the minor while in said employ without the father's
consent, the employer is not excused.

VIII.  " Is the third charge correct ? "

If the measure of damages, as given in the first charge,

were correct, then we think this charge would be correct. But as the relative, and not the absolute, rights of the father are involved in this case, and these are essentially different and measured from different causes, and the former are much more restricted than the latter; and as the court applied in this case the rule that pertains to the latter, thereby giving the jury a greater latitude, and authorizing them to assess damages to which the son only could be entitled; and as the court, in this charge, referred the jury to the first for the measure of damages, we think this charge erroneous in that particular. The father, being entitled to the services of the son during his minority, would be entitled to recover the difference, if any, between the value of the latter's services from the time his injuries were healed until his majority, and what they would have been worth if he had not been injured. In other words, for his lessened ability to render service between those periods, caused by his injury; the difference aforesaid being the measure of compensation.

IX. "If the injury was caused by the negligence of the employer, is it immaterial whether or not the minor was negligent?"

In a suit of this character, we think it is not material; but in a suit between the minor and his employer, founded on the act which produced the injury, it would be most material. But that is not this case.

X. "In estimating the damages, was it proper to include the expenses of the family, and the value of the labor of the father and minor son during the time he was being cured; and should not the medical bill (at ten dollars a visit) have been shown by proof to have been reasonable?"

The family expenses should not be included as part of the father's compensation. These he was bound to incur if his son had not been injured.

The value of the son's services during the time he was being cured should be included, because the father was entitled to them; and if deprived of them by the unauthor-

ized act of the defendant, the latter must account for their value.

The value of the father's labor, in attentions to his son, should not be included, because this was one of his natural and legal duties and obligations to his son, the performance of which entitled the father to the son's services; (Wood on Master and Serv., sec. 8; Nightingale *v.* Washington, 15 Mass., 272;) and, therefore, to maintain this suit, and to recover for the same, he must allege special damages thereby sustained. (Harris *v.* Finberg, 46 Tex., 79.)

In reëxamining this case, counsel for appellant conclude that their brief originally filed does not argue the case from the legitimate standpoint, with reference to the rights of the parties. In answering the questions propounded by the court, they have stated the principles of law as they understand them to apply to the facts of this case, and by which the rights of the parties are to be determined.

*John T. Harcourt*, for appellee, in answer to the first question propounded by the court, argued at length, citing the following authorities, viz.: Wood on Master and Serv., sec. 11; Stovall *v.* Johnson, 17 Ala., 14; The Etna, Ware's U. S., 402; Plummer *v.* Webb, 4 Mass., (N. S.,) 380; James *v.* LeRoy, 6 Johns., (N. Y.,) 274; 1 Blackst., 452; 1 Pars. on Cont., 257; Law of Master and Serv., sec. 14; Conant *v.* Raymond, 2 Aiken, (Vt.,) 243; Munsey *v.* Goodwin, 3 N. H., 272; Bowes *v.* Tibbets, 7 Me., 457; Drew *v.* Sixth Av. R. R. Co., 26 N. Y., (12 Smith,) 49; O'Mara *v.* Hudson River R. R. Co., 38 N. Y., (11 Tiff.,) 445; Rogers *v.* Smith, 17 Ind., 323; Kennard *v.* Burton, 25 Me., 39; Wilt *v.* Vickers, 8 Watts, 227; Pence *v.* Dozie, 7 Bush, (Ky.,) 133; Martin *v.* Payne, 9 Johns., (N. Y.,) 387; Bolton *v.* Miller, 6 Ind., 262; Emery *v.* Gowen, 4 Me., (4 Greenl.,) 33; Greenwood *v.* Greenwood, 28 Md., 369; Mulvehall *v.* Millward, 11 N. Y., (1 Kern.,) 343; per Tindall, C. J., 7 M. & Gr., 1041; 49 Eng. Com. Law Rep., citing Russell *v.* Corne, 2 Ld. Raym., 1031.

and Gray *v.* Jeffries, 1 Cro. Eliz., 55; Hall *v.* Hollander, 4 Barn. & Cres., 633; 10 Eng. Com. Law Rep., 746; Broom's Comm. on the Common Law, 562; Dixon *v.* Bell, 5 M. & S., 198; Judkins *v.* Walker, 17 Me., 38; Lowe *v.* Sinklear, 27 Mo., 308; Thomas *v.* Dike, 11 Vt., 273.

II. The apparent age and size of the minor can have no influence on this question. "A person hires a minor at his peril." "It is his duty to ascertain the legal status of the child." The policy of the law is to keep families together, and not to encourage insubordination to the parents' authority. Inducements should not be offered to minors to leave the parental roof until twenty-one years of age. "Even fraudulent representations made by an infant cannot affect the question." (Studwell *v.* Shapter, 54 N. Y., 249.)

III. We think, in reply to the third proposition, that to put an inexperienced minor to hazardous work, without the father's consent, is negligence; and the court should so charge it. (Sher. & Red. on Neg., sec. 11.) "The court, in charging upon the question of negligence, should say what negligence would, and what would not, make the party liable." (Pittsburg, Fort Wayne and Chicago R. R. Co. *v.* Evans, 53 Penn., 250.)

IV. It must be presumed, in absence of proof to the contrary, that the minor had not been emancipated. The father was poor, and had to leave his home to make a support for his family. He was 150 miles from home. He had directed his son to finish a job of getting out timber, cord-wood, and to stay with his mother. (Law of Master and Serv., sec. 14, and cases cited.)

V. We think it follows that the contract was not obligatory, and that the minor son remained the servant of the father, and could not serve two masters; and hence could not be a fellow-servant on the railroad. (Authorities cited.)

VI. We think the third charge of the court is in the language of the authorities we have cited, and is fully sustained.

VII. If the injury was by the negligence of the railroad company, it was by their own wrong in placing an inexperienced boy at hazardous work, and they did it at their peril, and took the risk of his getting hurt, either by his own unskillfulness or negligence, or by their servants'. (Authorities cited above.)

VIII. The measure of damages. It must be compensatory, and to be so, the loss of the father in every particular must be estimated. The additional family expense, and loss of time of father and son, and the medical bill, were all the result of the wrongful act of the defendant.

ROBERTS, CHIEF JUSTICE.—This case having been previously submitted, and being examined, was, at this term, referred back to counsel for further examination, and reference to authorities upon questions propounded in making the reference, which have been responded to by counsel on both sides in a manner to deserve the commendation of the court, and to enable us readily to decide the case. Such candor as that exhibited in appellant's supplemental written argument, in fairly presenting the law, with reference to authorities, and in not seeking to press upon the court those points that are clearly untenable, so as to present the case upon its true merits, if more generally adopted, instead of the too prevalent habit of contending for everything on all points, would meet with full appreciation, and, before any intelligent court, would not incur any risk of having its proper influence in the decision of the case.

The charge of the court has been closely examined; and, without going into a criticism of its parts, it will suffice to say, that, taking it all together, it cannot be held to be unfavorable to the defendant, as it must have been understood by the jury. It is unnecessary to consider, in reference to the facts of this case, to what qualifications the first charge might be subject upon a different set of facts, or whether or not the third charge did not require more to be proved by

the plaintiff, on the subject of negligence, than would often be necessary for a parent to maintain an action for damage done to his minor son, employed by a railroad company without his knowledge or consent. The general remarks of the charge, about the duty of a railroad company to keep proper engines, officers, and railroad tracks, were correct in themselves, though unnecessary; but it is not thought that they could have had any improper influence on the jury.

There was no controversy about the facts, except in regard to the manner in which the injury was inflicted; and upon that, the evidence was conflicting, and not of such character as that we could hold that it was not sufficient to sustain the verdict, under the law as charged by the court.

The main question that we have had any hesitation upon, is the proof of damages. The medical bill seems to be high, and so do the charges for the expenses of the family and loss of wages during the confinement of the son from the injury. But they were claimed in the amended petition, and there seems to have been no effort to controvert the proof of them as it was made on the trial, so as to reduce them. The fact that the jury found less than was claimed, by a few hundred dollars, shows that they properly considered the subject; and though it might seem to us that they might reasonably have been less, still the fact that the plaintiff and his wife had to leave home, and go to Houston, and remain there to nurse and take care of their son, necessarily made their expenses greater than if their son could have been attended to under other circumstances, which were matters for the consideration of the jury.

The items of charge made in the petition, and proved on the trial, were such as have been held to be proper in a damage suit of this kind, to wit, "loss of service of the son until the age of twenty-one years, expense of medical attendance and of nursing, and such other expenses as are rendered necessary by the injury." (Oakland R. R. Co. *v.* Fielding, 48 Penn., 327.)

The damages awarded are not so excessive as to raise the presumption of any unfairness or prejudice in estimating them, under the evidence before the jury, which was not objected to, and which there was no effort to rebut, on the part of the defendant, on the trial.

. Judgment is affirmed.

AFFIRMED.